WILLIAM F. TARANTINO (CA SBN 215343)
WTarantino@mofo.com
KWAN PARK (SBN 306719)
BPark@mofo.com
ROBERT SANDOVAL (SBN 311032)
RSandoval@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard, Suite 6000
Los Angeles, California  90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Plaintiff
CALIFORNIA GROCERS ASSOCIATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA GROCERS ASSOCIATION, a California non-profit organization,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF MONTEBELLO, a general law municipality,<br><br>Defendant. | Case No. 2:21-cv-1011<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff California Grocers Association ("Plaintiff" or "CGA") brings this action against Defendant City of Montebello ("Defendant" or "City") and alleges as follows in this Complaint for declaratory and injunctive relief:

## INTRODUCTION

1.    At the onset of the COVID-19 pandemic, the State of California and various counties, cities, and other regulatory bodies throughout the state issued a series of emergency orders and regulations in an effort to stem the spread of the virus and protect the public health and welfare. These early efforts—aimed at balancing the public's basic economic and social needs with a desire to minimize COVID morbidity and mortality—came at a steep price, especially for essential businesses, and the millions of employees and members of the public who rely on them.

2.    California grocers have stayed open to serve their communities since day one. They understand that defeating this pandemic requires extraordinary measures and have eagerly committed themselves to the task. Since March of 2020, California grocers of all sizes have established rigorous and science-driven safety measures, often at great expense, to adapt to this new environment and ensure that they operate in a safe and hygienic manner in order to help slow the spread of the virus, and protect their workers and the public.

3.    Grocers have implemented comprehensive safety measures for customers and employees and compensated frontline grocery employees for their extra efforts in a difficult environment.  Grocers have provided "appreciation pay," "hero bonuses," and "thank you pay" to reward their associates.  Additionally, in terms of employee support, grocers have offered COVID-19 testing to employees and provided emergency leave and paid time off to those affected by the virus or experiencing symptoms.

4.    For worker safety, grocers have provided supplies to employees including face masks and protective gear in addition to encouraging employees to stay home if feeling ill and implementing paid leave policies. Plexiglas shields, physical distancing measures, and contactless payment and delivery services have been implemented to protect employees.  Some of California's largest grocers such

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4422250

1    as Kroger and Albertsons joined the United Food and Commercial Workers

2    International union just last year to urge federal and state governments to designate

3    grocery store employees as emergency first responders.

4         5.     Yet on January 27, 2021, the City passed the "Premium Pay for

5    Grocery and Drug Store Workers Ordinance" ("Ordinance") which requires

6    employers to pay a $4 per hour premium on whatever the employees existing wage

7    is at the time of enactment, regardless of any existing bonus, incentive, or hero pay

8    program that the employer may have in place.

9         6.     The Ordinance unreasonably singles out specific employee classes

10   in specific grocers and drug stores, while ignoring employers or essential frontline

11   workers outside the grocery and drug store industries.  Plaintiff seeks a declaration

12   that the law is invalid and unconstitutional, and an injunction halting any action to

13   enforce the Ordinance on the grounds that it (1) is preempted by federal law

14   regulating collective bargaining and unfair labor practices; (2) violates the equal

15   protection and contracts clauses of the U.S. and California constitutions.

16                  **JURISDICTION AND VENUE**

17        7.     This Court has jurisdiction over the subject matter of this suit

18   pursuant to 28 U.S.C. §1331, as the Plaintiffs' claims arise under federal laws;

19   namely, the National Labor Relations Act, 29 U.S.C. §141 *et seq.*; Article VI of the

20   U.S. Constitution which designates the Constitution and Laws of the United States

21   as the supreme law of the land; and the equal protection clause and contracts clause

22   of the U.S. Constitution.

23        8.     This Court has supplemental jurisdiction over this subject matter

24   pursuant to 28 U.S.C. §1367(a), as the Plaintiffs' claims arising under the

25   California Constitution are so closely related to the federal question claims that they

26   form part of the same case or controversy under Article III of the U.S. Constitution.

27        9.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b), as

28   this Court is sited in the federal judicial district where the events giving rise to the

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

1    CGA's claims have occurred, are now occurring, and will occur in the future if not

2    prevented through actions of this Court. CGA's members are situated in this district

3    and are and will continue to be adversely affected by the irreparable harms sought

4    to be remedied and prevented by this Court's action upon this Complaint.

5                                    **PARTIES**

6           10.    Plaintiff California Grocers Association has served as the voice of

7    the state's grocery community for over 120 years. As a nonprofit, statewide trade

8    association, CGA's membership is comprised of over 300 retailers and

9    approximately 150 grocery supply companies. As part of its mission, CGA has

10   advocated on behalf of its member retailers on important policy issues.

11   Headquartered in Sacramento, California, CGA brings this action on behalf of its

12   members operating stores in the City of Montebello.

13          11.    Defendant, City of Montebello, is and at all relevant times has been

14   a public entity duly organized and existing under and by virtue of the laws of the

15   State of California as a general law municipality.

16                          **FACTUAL BACKGROUND**

17          12.    California Grocers Association pursues this action on behalf of its

18   members who are grocery store employers ("Members") because the employers

19   who operate grocery stores in Montebello will suffer a direct and adverse impact

20   from the application of the Ordinance, and thus would have standing to pursue

21   these claims in their own right.  The policy and legal interest CGA seeks to protect

22   is at the core of Plaintiff's mission, and the injunctive and declaratory relief sought

23   does not require the participation of individual members.

24          13.    Several Members operate grocery stores in the City that employ

25   members of a specific labor union, United Commercial Food Workers International,

26   Local 324 ("UCFW 324"), and those employees are parties to collective bargaining

27   agreements that govern the terms of their employment, including wage scales.

28   Other Members operate grocery stores that do not employ unionized workers, but

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

those employees are free to organize and select a collective bargaining unit, should they choose to do so.

14.     Members have suffered or will continue to suffer economic and non-economic harm as a result of the enactment of the Ordinance, and its foreseeable consequences on union organizing, ongoing collective bargaining, and labor relations for both unionized and non-union grocery stores in the City of Montebello. Members are required to alter the wage scales and other terms of their existing collective bargaining agreements, regardless of any additional hero pay, bonuses, or other non-monetary compensation provided to their employees to ease the burden of the COVID-19 pandemic.

15.     The Ordinance also prohibits an employer from taking any action related to the Ordinance that could impact any employee's "earning capacity," effectively preventing the employer from taking any action to control labor costs, despite the government-mandated wage increases.  Failure to immediately comply with the Ordinance will expose the Members to civil sanctions, loss of goodwill, and other irreparable harm.

16.     Both UCFW 324 and the national UCFW organization have been active in promoting and negotiating with employers for hero pay. Over the last two months, the national UCFW has made numerous statements in the press that hazard pay bonuses and other compensation are appropriate topics for bargaining, even announcing recent "victories" in negotiations with other grocery retailers in California, New Jersey, New York, and around the country where employers have agreed to pay supplemental hazard pay premiums, some of which are being paid currently.

17.     By design, the Ordinance picks winners and losers.  It singles out large grocery companies with unionized workforces (i.e., UCFW 324's members) without providing any reasonable justification for the exclusion of other employers or frontline retail workers. The Ordinance arbitrarily and improperly targets certain

grocery store businesses in Montebello for disparate treatment while not requiring the same commitments from similarly situated businesses, or conferring *any* benefits on similarly situated employees.  There is no support for any of the City's statements that the Premium Pay will protect public health, address economic insecurity, and promote job retention.

## **THE ORDINANCE**

18.     The Premium Pay for Grocery Workers Ordinance codified in Chapter 5.10 in the Montebello Municipal Code is attached hereto as **Exhibit A**.  It applies to "grocery stores" which is defined as a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged.  Section 5.10.030.  Specifically, the ordinance applies to those grocery store "hiring entit[ies]" that employ three hundred (300) or more grocery workers nationally and employ more than fifteen (15) employees per grocery store in the City of Montebello.  Id.

19.     Grocery stores meeting this minimum threshold of employees are required to provide each employee with premium pay consisting of an additional four dollars ($4.00) per hour for each hour worked.  Section 5.10.060.  The Ordinance is set to expire in 180 days. *Id.*

20.     The Ordinance prohibits reducing a grocery employee's compensation or limiting a grocery employee's earning capacity unless the employer can prove the decision would have happened in absence of the Ordinance. Section 5.91.070.

21.     Grocery stores are required to provide a notice of rights established by the Ordinance.  Section 5.91.080.

## **FIRST CAUSE OF ACTION**

### **Declaratory and Injunctive Relief**

### **(NLRA Preemption)**

22.     CGA incorporates herein by this reference the allegations contained

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

1    in Paragraphs 1 through 21, inclusive.

2            23.    Enacted in 1935, the National Labor Relations Act ("NLRA"), as

3    amended, 29 U.S.C. § 151, *et seq*., creates a uniform federal body of law governing

4    union organizing, collective bargaining, and labor-management relations applicable

5    to employers engaged in interstate commerce.  It established various rules

6    concerning collective bargaining and defined a series of banned unfair labor

7    practices, including bans on interference with the formation or organization of labor

8    unions by employers. The NLRA does not apply to certain workers, including

9    supervisors, managerial employees and confidential employees – all categories

10   specifically excluded from the Ordinance.

11           24.    The NLRA prohibits state and local regulation of conduct that

12   Congress intended to be left to be controlled by the free-play of economic forces.

13   Legislation that interferes with the "balanced state of collective bargaining" is

14   preempted by the NLRA.  *See Machinists v. Wisconsin Employment Relations*

15   *Comm'n*, 427 U.S. 132 (1976).

16           25.    In particular, the NLRA preempts any and all state and local

17   enactments that, by design or consequence, regulate or interfere with the then-

18   existing balance of economic power between labor and management with respect to

19   zones of activity that, under federal labor law, are intended to be left to the free play

20   of economic forces. Laws subject to NLRA preemption include laws that interfere

21   with or attempt to regulate the economic tools available to labor or management

22   during the course of collective bargaining or that otherwise interfere with the

23   collective bargaining process, such as those that alter the parties' rights and

24   economic alternatives during collective bargaining, or the processes and procedures

25   utilized for union organizing.

26           26.    Application of the Ordinance to the activities of the Montebello

27   Members unequivocally intrudes upon zones of activity in the areas of labor

28   relations, union organizing, and collective bargaining that is reserved under federal

7

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

labor law and policy to the free play of economic forces.  The Ordinance establishes premium pay standards that, by design or consequence, empower the UFCW or other collective bargaining units to secure a wage rate they could not otherwise have obtained from the employer at a unionized or non-union grocery store. This undermines the collective bargaining process and disrupts the process of union organizing.

27.     While the City has the ability to enact ordinances to further the health and safety of its citizens, the Ordinance here bears no relation to those goals. Local minimum wage laws, for example, seek to lessen the burden on public welfare services. This ordinance is not a minimum labor standard.  It is a mandatory hourly bonus for a specific group of workers, regardless of the wage negotiated in the current collective bargaining agreements or other employment agreements.

28.     The Ordinance is preempted by the NLRA as it regulates zones of activity that Congress intentionally left to be controlled by the free play of economic forces.

29.     The City's application and enforcement of the Ordinance will cause CGA's Members to suffer irreparable harm for which they have no adequate remedy at law, even if the Ordinance is later declared by this Court to be void and unenforceable. This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

30.     CGA is entitled to judgment declaring the Ordinance to be void and unenforceable under the Supremacy Clause of the U.S. Constitution and equitable and injunctive relief to prevent the City of Montebello or any other private enforcer from attempting to enforce or give effect to the Ordinance.

## SECOND CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (Equal Protection Clause of the United States Constitution)

31.     CGA incorporates herein by this reference the allegations contained

8

1  in Paragraphs 1 through 30, inclusive.

2        32.    CGA hereby seeks declaratory, equitable and injunctive relief to

3  prevent the City from depriving Plaintiff's members of the protections afforded to

4  them under the Equal Protection Clause of the U.S. Constitution, which guarantee

5  each and all of them equal protection of the laws.  (U.S. Const., Amend. XIV, § 1).

6  This claim is also brought pursuant to 42 U.S.C. §1983 and §1988(b).

7        33.    The Equal Protection Clause requires that persons who are similarly

8  situated receive like treatment under the law, and that statutes may single out a class

9  for distinction only if that classification bears a rational relationship to the purpose

10  of the statute.  As such, the City may not irrationally single out one class of

11  individuals for discriminatory treatment.

12        34.    The Ordinance improperly singles out certain grocery store

13  businesses in Montebello for disparate treatment while not requiring the same

14  treatment of similarly situated businesses.  More importantly, the ordinance

15  implicates the Members' fundamental right to be free from unreasonable

16  governmental interference with their contracts, specifically their collective

17  bargaining agreements and other employment agreements.

18        35.    The stated purpose of the Ordinance, namely, to protect public

19  health, address economic insecurity, and promote job retention during the COVID-

20  19 emergency by requiring grocery stores to provide premium pay is not rationally

21  related to the discriminatory treatment of CGA's Members.  No significant and

22  legitimate public purpose exists for the Ordinance.  The City's stated objectives are

23  merely an attempt to impose a public policy rationale on interest-group driven

24  legislation for labor unions and, in particular, for UFCW 324.

25        36.    By virtue of the foregoing, application of the Ordinance to the

26  CGA's Members within the City violates the equal protection guarantees of the

27  U.S. Constitution.

28        37.    The City's application and enforcement of the Ordinance will cause

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

1    Plaintiff's members to suffer irreparable harm for which they have no adequate
2    remedy at law, even if the Ordinance is later declared by this Court to be void and
3    unenforceable.

4                        **THIRD CAUSE OF ACTION**
5                      **Declaratory and Injunctive Relief**
6            **(Equal Protection Clause of the California Constitution)**

7            38.    CGA incorporates herein by this reference the allegations contained
8    in Paragraphs 1 through 37, inclusive.

9            39.    CGA hereby seeks declaratory, equitable and injunctive relief to
10   prevent the City from depriving CGA's members of the protections afforded to
11   them under the Equal Protection Clause of the California Constitution, which like
12   the U.S. Constitution, guarantees each and all of them equal protection of the laws.
13   (Cal. Const., Art. I § 7.)

14           40.    For the same reasons set forth in Paragraphs 31 through 37 above,
15   the Ordinance violates the Equal Protection Clause of the California.  Such
16   application will cause CGA's Members to suffer irreparable harm for which they
17   have no adequate remedy at law.

18                      **FOURTH CAUSE OF ACTION**
19                   **For Declaratory and Injunctive Relief**
20            **(Contracts Clause of the U.S. Constitution)**

21           41.    CGA incorporates herein by this reference the allegations contained
22   in Paragraphs 1 through 40, inclusive.

23           42.    CGA hereby seeks declaratory, equitable and injunctive relief to
24   prevent the City from depriving CGA's Members of the protections afforded to
25   them under the Contracts Clause of the U.S. Constitution, which provides in
26   pertinent part that: "No State shall . . . pass any . . . Law impairing the Obligation of
27   Contracts . . . ." (U.S. Const., Art. I, § 10, cl. 1).  The Contract Clause imposes
28   limits upon the power of a State, and Municipalities operating under the color of

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

State law, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power.

43. The Ordinance substantially interferes with Members' contracts, including its collective bargaining agreements with its employees, without any significant or legitimate public purpose. The City's stated objectives are to protect public health, address economic insecurity, and promote job retention. None of these justifications support this measure, because the City's stated objectives are merely an attempt to impose a public policy rationale on interest-group driven legislation for labor unions and, in particular, for UFCW.

44. Even if the City could show a significant and legitimate public purpose behind the regulation, the substantial impairment to the Members' contractual rights and obligations (i.e., the terms of the Members' existing collective bargaining agreements) are neither reasonable nor necessary to fulfill any such public purpose.

45. By virtue of the foregoing, application of the Ordinance to CGA's members constitutes a substantial and unconstitutional impairment of those members existing contractual relationships that will cause them to suffer irreparable harm for which they have no adequate remedy at law.

**FIFTH CAUSE OF ACTION**

**Declaratory and Injunctive Relief**

**(Contracts Clause of the California Constitution)**

46. CGA incorporate herein by this reference the allegations contained in Paragraphs 1 through 45, inclusive. Plaintiffs hereby seek declaratory and injunctive relief to prevent the City from violating, and continuing to violate, the Contract Clause of the California Constitution, which provides in pertinent part that: "A ... law impairing the obligation of contracts may not be passed." (Cal. Const., Art. I, § 9.)

47. Like the Federal Contracts Clause, the California Contracts Clause

11

sf-4422250

also imposes limits upon the State of California, and its municipalities, to abridge existing contractual relationships, even in the exercise of its otherwise legitimate police power. For the same reasons set forth in Paragraphs 41 through 45 above, application of the Ordinance to CGA's members within the City constitutes a substantial and unconstitutional impairment of those members existing contractual relationship in violation of the California Contract Clause. Such application will cause those members to suffer irreparable harm for which they have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.      On the first cause of action, a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, is preempted by the National Labor Relations Act, and its implementing regulations and guidance, and are therefore void and unenforceable, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

2.      On the second and third causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate state and federal equal protection guarantees, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

3.      On the fourth and fifth causes of action, enter a judgment declaring that the Ordinance, as well as any act taken in furtherance of the Ordinance by any person, violate the contracts clauses of the state and federal constitution, and are therefore void and invalid, and entering a preliminary and permanent injunction enjoining the City from enforcing or taking any action under the Ordinance;

4.      For an award of attorneys' fees and costs of suit herein pursuant to California Code of Civil Procedure § 1021.5, 42 U.S.C. §1988, or any other

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF
sf-4422250

1   applicable law; and

2           5.      For such other and further relief as the Court may deem just and

3   proper.

4

5   Dated:     February 3, 2021              MORRISON & FOERSTER LLP

6

7

8                                    By:     */s/ William F. Tarantino*
                                             William F. Tarantino

9
                                             Attorneys for Plaintiff
10                                           CALIFORNIA GROCERS
                                             ASSOCIATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

sf-4422250

# EXHIBIT A

## ORDINANCE NO. <u>2433</u>

**AN ORDINANCE OF THE CITY COUNCIL OF THE CITY OF MONTEBELLO AMENDING THE MONTEBELLO MUNICIPAL CODE BY ADDING CHAPTER 5.10, RELATING TO GROCERY OR DRUG STORE WORKERS IN MONTEBELLO, AND ESTABLISHING LABOR STANDARDS REQUIREMENTS FOR PREMIUM PAY FOR GROCERY OR DRUG STORE WORKERS WORKING IN MONTEBELO; DECLARING THE URGENCY THEREOF; AND DECLARING THAT THIS ORDINANCE SHALL TAKE EFFECT IMMEDIATELY**

**WHEREAS**, the new coronavirus 19 (COVID-19) disease is caused by a virus that spreads easily from person to person and may result in serious illness or death, and is classified by the World Health Organization (WHO) as a worldwide pandemic; and

**WHEREAS**, COVID-19 has broadly spread throughout California and remains a significant health risk to the community, especially members of our most vulnerable populations; and

**WHEREAS**, on March 4, 2020, California Governor Gavin Newsom proclaimed a state of emergency in response to new cases of COVID-19, directing state agencies to use all resources necessary to prepare for and respond to the outbreak; and

**WHEREAS**, on March 10, 2020, the City Council of the City of Montebello proclaimed a civil emergency in response to new cases of COVID-19, authorizing the City Manager to exercise the emergency powers necessary to take extraordinary measures to prevent death or injury of persons and to protect the public peace, safety and welfare, and alleviate damage, loss, hardship or suffering; and

**WHEREAS**, on March 19, 2020, California Governor Gavin Newsom issued a "Stay Home - Stay Healthy" proclamation closing all non-essential workplaces, requiring people to stay home except to participate in essential activities or to provide essential business services, and banning all gatherings for social, spiritual, and recreational purposes. In addition to healthcare, public health and emergency services, the "Stay Home - Stay Healthy" proclamation identified grocery or drug store stores as essential business sectors critical to protecting the health and well-being of all Californians and designated their workers as essential critical infrastructure workers; and

**WHEREAS**, on December 3, 2020, California Governor Gavin Newsom extended the "Stay Home - Stay Healthy" proclamation; and

**WHEREAS**, as of January 5, 2021, the World Health Organization Situation Report reported a global total of 86,833,481 cases of COVID-19, including 1,875,460 deaths; California reported 2,490,000 cases of COVID-19, including 27,038 deaths; and Montebello reported 35,664 cases of COVID-19, including 420 deaths; and

**WHEREAS**, grocery or drug stores are essential businesses operating in Montebello during the COVID-19 emergency making grocery or drug store workers highly vulnerable to economic insecurity and health or safety risks; and

**WHEREAS**, grocery or drug store workers working for grocery or drug stores are essential workers who perform services that are fundamental to the economy and health of the community during the COVID-19 crisis. They work in high risk conditions with inconsistent access to protective equipment and other safety measures; work in public situations with limited ability to engage in physical distancing; and continually expose themselves and the public to the spread of disease; and

**WHEREAS**, premium pay, paid in addition to regular wages, is an established type of compensation for employees performing hazardous duty or work involving physical hardship that can cause extreme physical discomfort and distress; and

Exhibit A
15

**ORDINANCE NO. <u>2433</u>**
Page 2 of 6

WHEREAS, grocery or drug store workers working during the COVID-19 emergency merit additional compensation because they are performing hazardous duty due to the significant risk of exposure to the COVID-19 virus. Grocery or drug store workers have been working under these hazardous conditions for months. They are working in these hazardous conditions now and will continue to face safety risks as the virus presents an ongoing threat for an uncertain period, potentially resulting in subsequent waves of infection; and

WHEREAS, the availability of grocery or drug store  stores is fundamental to the health of the community and is made possible during the COVID-19 emergency because grocery or drug store workers are on the frontlines of this devastating pandemic supporting public health, safety, and welfare by working in hazardous situations; and

WHEREAS, establishing an immediate requirement for grocery or drug stores to provide premium pay to grocery or drug store workers protects public health, supports stable incomes, and promotes job retention by ensuring that grocery or drug store workers are compensated for the substantial risks, efforts, and expenses they are undertaking to provide essential services in a safe and reliable manner during the COVID-19 emergency; and

WHEREAS, California Government Code sections 8634, 36934 and 36937 authorize the City Council to take action by ordinance to take effect immediately for the preservation of the public peace, health or safety when adopted by a four-fifths vote of the City Council.

**NOW, THEREFORE, THE CITY COUNCIL OF THE CITY OF MONTEBELLO DOES ORDAIN AS FOLLOWS:**

**Section 1.** The Montebello Municipal Code is amended by adding Chapter 5.10 to read as follows:

**CHAPTER 5.10**
**PREMIUM PAY FOR GROCERY OR DRUG STORE WORKERS**

**5.10.010      Purpose.**
As a result of the COVID-19 pandemic and the "Stay at Home" order issued by California Governor Gavin Newsom, this Ordinance aims to protect and promote the public health, safety, and welfare during the new coronavirus 19 (COVID-19) emergency by requiring grocery or drug store  stores to provide premium pay for grocery or drug store and drug store workers performing work in Montebello. Requiring grocery or drug stores to provide premium pay to grocery or drug store workers compensates grocery or drug store workers for the risks of working during a pandemic. Grocery or drug store workers face magnified risks of catching or spreading the COVID-19 disease because the nature of their work involves close contact with the public, including members of the public who are not showing symptoms of COVID-19 but who can spread the disease. The provision of premium pay better ensures the retention of these essential workers who are on the frontlines of this pandemic providing essential services and who are needed throughout the duration of the COVID-19 emergency. As such, they are deserving of fair and equitable compensation for their work.

**5.10.020      Short title.**
This ordinance shall constitute the "Premium Pay for Grocery and Drug Store Workers Ordinance" and may be cited as such.

**5.10.030      Definitions.**
For purposes of this Ordinance:
"Adverse action" means reducing the compensation to a grocery or drug store worker, garnishing gratuities, temporarily or permanently denying or limiting access to work, incentives, or bonuses, offering less desirable work, demoting, terminating, deactivating, putting a grocery or drug store worker on hold status, failing to rehire after a seasonal interruption of work, threatening, penalizing, retaliating, or otherwise

2

Exhibit A<br>16

**ORDINANCE NO. <u>2433</u>**
Page 3 of 6

discriminating against a covered grocery or drug store worker for any reason prohibited by Sections 5.10.070 or 5.10.100.

"Adverse action" also encompasses any action by the hiring entity or a person acting on the hiring entity's behalf that would dissuade a grocery or drug store worker from exercising any right afforded by this ordinance.

"Aggrieved party" means a grocery or drug store worker or other person who suffers tangible or intangible harm due to a hiring entity or other person's violation of this ordinance.

"City" means the City of Montebello.

"Covered grocery or drug store worker" means a grocery or drug store worker employed directly by a hiring entity who is entitled to premium pay pursuant to this Ordinance.

"Drug store worker" means a worker employed directly by a hiring entity at a drug store. Drug store worker does not include managers, supervisors or confidential employees.

"Grocery worker" means a worker employed directly by a hiring entity at a grocery store. Grocery worker does not include managers, supervisors or confidential employees.

"Drug store" means a store that devotes seventy percent (70%) or more of its business to retailing a general range of drugs, pharmaceuticals, cosmetics and related products, including food products, which may be fresh or packaged. There is a rebuttable presumption that if a store receives seventy percent (70%) or more revenue from retailing a general range of drugs, pharmaceuticals, cosmetics and related products, including food products, then it qualifies as a drug store.

"Grocery store" means a store that devotes seventy percent (70%) or more of its business to retailing a general range of food products, which may be fresh or packaged. There is a rebuttable presumption that if a store receives seventy percent (70%) or more revenue from retailing a general range of food products, then it qualifies as a grocery store.

"Hiring entity" means a grocery or drug store that employs over three hundred (300) grocery or drug store workers nationally and employs more than fifteen (15) employees per grocery or drug store in the City of Montebello.

"Premium pay" means additional compensation owed to a grocery or drug store worker that is separate from hiring entity payments for providing services, bonuses, and commissions, as well as tips earned from customers.

"Respondent" means a grocery or drug store, parent company or any person who is alleged or found to have committed a violation of this Ordinance.

**5.10.040      Grocery or drug store worker coverage.**
For the purposes of this Ordinance, covered grocery or drug store workers are limited to those who perform work for a hiring entity where the work is performed in the City of Montebello.

**5.10.050      Hiring entity coverage.**
A.      For purposes of this Ordinance, hiring entities are limited to those who employ three hundred (300) or more grocery or drug store workers nationally and employ more than fifteen (15) employees per grocery or drug store in the City of Montebello.

B.      To determine the number of grocery or drug store workers employed for the current calendar year:

3

**ORDINANCE NO. 2433**
Page 4 of 6

      1. The calculation is based upon the average number per calendar week of grocery or drug store workers who worked for compensation during the preceding calendar year for any and all weeks during which at least one (1) grocery or drug store worker worked for compensation. For hiring entities that did not have any grocery or drug store workers during the preceding calendar year, the number of grocery or drug store workers employed for the current calendar year is calculated based upon the average number per calendar week of grocery or drug store workers who worked for compensation during the first ninety (90) calendar days of the current year in which the hiring entity engaged in business.

      2. All grocery or drug store workers who worked for compensation shall be counted, including but not limited to:
      a. Grocery or drug store workers who are not covered by this Ordinance; and
      b. Grocery or drug store workers who worked in Montebello.

**5.10.060    Premium pay requirement.**
    A.    Hiring entities shall provide each grocery or drug store worker with premium pay consisting of an additional Four and 00/100 Dollars ($4.00) per hour for each hour worked.

    B.    Hiring entities shall provide the pay required by Subsection 5.10.060 (A) for a minimum of One Hundred Eighty (180) days from the effective date of this Ordinance.

    C.    Unless extended by City Council, this ordinance shall expire in one hundred eighty (180) days.

**5.10.070    Grocery or drug store worker and consumer protections.**
    A.    No hiring entity shall, as a result of this Ordinance going into effect, take any of the following actions:
      1.    Reduce a grocery or drug worker's compensation;
      2.    Limit a grocery or drug store worker's earning capacity.

  B. It shall be a violation if this Ordinance is a motivating factor in a hiring entity's decision to take any of the actions in Subsection 5.10.070 (A) unless the hiring entity can prove that its decision to take the action(s) would have happened in the absence of this Ordinance going into effect.

**5.10.080    Notice of rights.**
    A.    Hiring entities shall provide covered grocery or drug store workers with a written notice of rights established by this ordinance. The notice of rights shall be in a form and manner sufficient to inform grocery or drug store workers of their rights under this ordinance. The notice of rights shall provide information on:
      1.    The right to premium pay guaranteed by this Ordinance;
      2.    The right to be protected from retaliation for exercising in good faith the rights protected by this ordinance; and

      3.    The right to bring a civil action for a violation of the requirements of this Ordinance, including a hiring entity's denial of premium pay as required by this Ordinance and a hiring entity or other person's retaliation against a covered grocery or drug store  or drug store  worker or other person for asserting the right to premium pay or otherwise engaging in an activity protected by this ordinance

    B.    Hiring entities shall provide the notice of rights required by posting a written notice of rights in a location of the grocery or drug utilized by employees for breaks, and in an electronic format that is readily accessible to the grocery or drug store workers. The notice of rights shall be made available to the grocery or drug store  workers via smartphone application or an online web portal, in English and any language that the hiring entity knows or has reason to know is the primary language of the grocery or drug store worker(s).

Exhibit A
18

**ORDINANCE NO. 2433**
Page 5 of 6

**5.10.090      Hiring entity records.**
      A.      Hiring entities shall retain records that document compliance with this Ordinance for covered grocery or drug store workers.

      B.      Hiring entities shall retain the records required by Subsection 5.10.090 (A) for a period of two (2) years.

      C.      If a hiring entity fails to retain adequate records required under Subsection 5.10.090 (A), there shall be a presumption, rebuttable by clear and convincing evidence, that the hiring entity violated this Ordinance for each covered grocery or drug store worker for whom records were not retained.

**5.10.100      Retaliation prohibited.**
      No hiring entity employing a grocery or drug store worker shall discharge, reduce in compensation, or otherwise discriminate against any grocery or drug store worker for opposing any practice proscribed by this Ordinance, for participating in proceedings related to this Ordinance, for seeking to exercise their rights under this Ordinance by any lawful means, or for otherwise asserting rights under this Ordinance.

**5.10.110      Violation.**
      The failure of any respondent to comply with any requirement imposed on the respondent under this Ordinance is a violation.

**5.10.120      Remedies.**
      A.      The payment of unpaid compensation, liquidated damages, civil penalties, penalties payable to aggrieved parties, fines, and interest provided under this Ordinance is cumulative and is not intended to be exclusive of any other available remedies, penalties, fines, and procedures. A respondent found to be in violation of this Ordinance for retaliation under Section 5.10.100 shall be subject to any appropriate relief at law or equity including, but not limited to reinstatement of the aggrieved party, front pay in lieu of reinstatement with full payment of unpaid compensation plus interest in favor of the aggrieved party under the terms of this Ordinance, and liquidated damages in an additional amount of up to twice the unpaid compensation.

**5.10.130      Private right of action.**
      A      Any covered grocery or drug store worker that suffers financial injury as a result of a violation of this Ordinance, or is the subject of prohibited retaliation under Section 5.10.100, may bring a civil action in a court of competent jurisdiction against the hiring entity or other person violating this Ordinance and, upon prevailing, may be awarded reasonable attorney fees and costs and such legal or equitable relief as may be appropriate to remedy the violation including, without limitation: the payment of any unpaid compensation plus interest due to the person and liquidated damages in an additional amount of up to twice the unpaid compensation; and a reasonable penalty payable to any aggrieved party if the aggrieved party was subject to prohibited retaliation.

**5.10.140      Encouragement of more generous policies.**
      A.      Nothing in this Ordinance shall be construed to discourage or prohibit a hiring entity from the adoption or retention of premium pay policies more generous than the one required herein.

      B.      Nothing in this Ordinance shall be construed as diminishing the obligation of a hiring entity to comply with any contract or other agreement providing more generous protections to a grocery or drug store worker than required by this Ordinance.

**5.10.150      Other legal requirements.**
      This Ordinance provides minimum requirements for premium pay while working for a hiring entity during the COVID-19 emergency and shall not be construed to preempt, limit, or otherwise affect the applicability of any other law, regulation, requirement, policy, or standard that provides for higher premium pay, or that extends other protections to grocery or drug store  workers; and nothing in this Ordinance shall be interpreted or applied so as to create any power or duty in conflict with federal or state law. Nothing in this Section shall be construed as restricting a grocery or drug store worker's right to

**ORDINANCE NO. <u>2433</u>**
Page 6 of 6

pursue any other remedies at law or equity for violation of their rights.

**5.10.160      Severability.**
   The provisions of this Ordinance are declared to be separate and severable. If any clause, sentence, paragraph, subdivision, section, subsection, or portion of this ordinance, or the application thereof to any hiring entity, grocery or drug store worker, person, or circumstance, is held to be invalid, it shall not affect the validity of the remainder of this Ordinance, or the validity of its application to other persons or circumstances.

   **Section 2.**   Declaration of Urgency. This Ordinance is urgently required to provide economic relief to grocery or drug store workers in light of the COVID-19 pandemic and related state and local "Safer at Home" health orders limiting business operations. For these reasons, the establishment of labor standard requirements for premium pay for grocery or drug store workers working in Montebello is immediately necessary.

   **Section 3.** This Ordinance is an emergency Ordinance duly adopted by the City Council by a vote of four (4) of its members and shall take effect immediately. The City Clerk shall certify to a separate roll call and vote on the question of the emergency of this Ordinance and to its passage by the vote of four (4) members of the City Council of the City of Montebello, and cause the same to be posted in two (2) conspicuous places in the City of Montebello, and it shall thereupon take effect and shall be operative immediately.

   **PASSED, APPROVED AND ADOPTED this 27th day of January 2021.**


_____
Kimberly A. Cobos-Cawthorne, Mayor

**ATTEST:**

_____
Christopher Jimenez, City Clerk

**APPROVED AS TO FORM:**

_____
Arnold M. Alvarez-Glasman, City Attorney


I hereby certify that on a separate roll call and vote which was taken by the City Council of the City of Montebello upon the question of emergency of this Ordinance at its meeting of January 27, 2021 the Ordinance was declared to be an emergency by the following vote:

   **AYES:** Melendez, Torres, Peralta, Jimenez, Cobos-Cawthorne
   **NOES:** None
   **ABSENT:** None
   **ABSTAIN:** None


_____
Christopher Jimenez City Clerk

6

Exhibit A
20